1

2

3

4

5

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                    CASE NO. 1:06-CV-1630-AWI-GSA

12                     Plaintiff,                  **FINDINGS AND RECOMMENDATIONS**
                                                   **GRANTING MOTION FOR DEFAULT**
13                                                 **JUDGMENT IN PART**

14
                                                   (Doc. 108)
15           vs.

16

17   CHARLES WAYNE UPTERGROVE, *et al.*,

18                     Defendants.
     _____/

19

20                          **I.  INTRODUCTION**

21          Pending before the court is the United State's ("Plaintiff's") Motion for Entry of Default

22   Judgment against Defendants Charles Wayne Uptergrove and Martha Gene Freeman Uptergrove

23   ("Defendants").  The court has reviewed the papers and has determined that this matter is suitable for

24   decision without oral argument pursuant to Local Rule 78-230(h).  Having considered all written

25   materials submitted, the undersigned recommends that the motion be granted in part. [1]

26

27          [1] The court notes that there were several other defendants in this action.  The status of these defendants with regard
     to this motion are as follows : Homeq  Servicing Corp ("HomEq") stipulated to its claim, and the court entered an order
28   thereon (Doc. 19); State of California, Employment Development Department ("EDD") filed a statement of nonopposition

                                          1

1

## II. BACKGROUND

2    On November 14, 2006, Plaintiff, filed a Complaint to :1) reduce federal tax assessments

3    against defendants Martha Gene Freeman Uptergrove to judgment; 2) to reduce assessments against

4    Defendant Charles W. Uptergrove to judgment which were the result of a trust Fund Recovery

5    Penalty;  and 3) to foreclose federal tax liens against Charles W. Uptergrove and Martha G.

6    Uptergrove ("Defendant's") upon their interest in real property located at 26662 Road 23,

7    Chowchilla, California, 93613 ("Subject Property").[2]

8    On December 29, 2006, both Defendants filed an answer to the complaint.  Subsequently, on

9    October 31, 2007, Defendants filed a Motion to Dismiss the complaint for lack of legislative

10   jurisdiction.  Doc. 65.  This Motion to Dismiss was denied by United States District Court Judge

11   Anthony Ishii on December 6, 2007. Doc. 72.

12   Both Defendants have exhibited a blatant display of noncompliance throughout this

13   litigation.  They have refused to accept several court orders and failed to participate in discovery

14   even after being ordered by the court to do so.[3]  Defendants' noncompliance with discovery entailed

15   failing to respond to interrogatories, requests for admissions, and requests for inspection of

16   documents, as well as a failure to attend depositions. As a result, this court imposed sanctions and

17

18   _____

19   to this motion and have stipulated to their lien priority (Doc. 110 and Doc. 126); State of California, Franchise Tax Board
     filed a Disclaimer Answer to the Complaint and was dismissed from this action (Doc. 22 and Doc. 127); Gulf Insurance

20   Company, ABC Supply Company, Inc., Meeks  Building Center, and the State of California, Department of Industrial
     Relations entered disclaimers of interest and the court issued an order of dismissal as to those parties (Docs. 7, 15, 30, 119);

21   Copeland Lumber Company ("Copeland") filed a stipulation of lien priority and the court issued an order thereon (Doc. 29).
     Therefore, the case is ripe for review.

22       [2]  The complaint alleges that the Defendants reside at the subject property. (Compl. at 2, ¶ 5 & 6).  The legal
     description of the subject property is as follows :

23
     THE NORTH 3/4 OF THE NORTH ½ OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 20,

24   TOWNSHIP 9 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE
     OFFICIAL PLAT THEREOF.

25
     APN: 030-120-013

26   (Complaint at 3, ¶ 16 - 19).

27
         [3]  A more thorough chronology of Defendants' noncompliance and procedural history is outlined in this court's

28   previous orders. Docs. 75, 99.

1    ordered that Plaintiff's request for admissions were deemed admitted, that Defendants Answer be

2    stricken, and default be entered against both of them. Doc. 75, 99.   On February 1, 2008, and March

3    10, 2008, the court also ordered that Defendants pay reasonable expenses in the amount of $1,597.81

4    and $308.56 respectively, to Plaintiff for Defendants' failures to appear at their depositions.  Docs.

5    88, 99.

6         Default was entered against both Defendants on March 11, 2008. Doc. 100.  On March 19,

7    2008, Defendants filed a Motion for Reconsideration of this court's order requiring that Defendants'

8    Answer be stricken and default be entered against them.  Doc. 103.  The Motion to Reconsider was

9    denied by United States District Judge Anthony W. Ishii. Doc. 114.

10        Plaintiff filed the instant Motion for Entry of Default Judgement on April 9, 2008.  On May

11   7, 2008, Defendant Charles Uptergrove filed an objection to the proceedings and an opposition to

12   Plaintiff's Motion. Doc. 115.   In the Motion for Entry of Default Judgment, Plaintiff  requests the

13   following relief :

14        a) That the court enter judgment against Defendant Charles W. Uptergrove in favor of the

15   United States of America in the amount of $385,879.94, plus all penalties and interest accruing after

16   March 31, 2008 pursuant to 26 U.S.C. §§ 6601, 6621, & 6622, and 28 U.S.C. § 1961(c) until paid;

17        b) That the court enter Judgment against Defendant Martha G. F. Uptergrove in favor of the

18   United States of America in the amount of $227,716.49, plus all penalties and interest accruing after

19   March 31, 2008 pursuant to 26 U.S.C. §§ 6601, 6621 6622, and 28 U.S.C. § 1961(c) until paid;

20        c) That the court enter judgment against Defendant Charles W. Uptergrove and Martha G. F.

21   Uptergrove, jointly and severally, in favor of the United States of America in accordance with the

22   Court's order dated February 1, 2008 in the amount of $1,597.81, plus all penalties and interest

23   accruing after March 2, 2008 until paid;

24        d) That the court enter judgment against Defendants Charles W. Uptergrove and Martha G. F.

25   Uptergrove, jointly and severally, in favor of the United States of America and in accordance with

26   the court's order dated March 10, 2008 in the amount of $308.56, plus all penalties and interest

27   accruing after March 25, 2008 until paid;

28        e) That the court order that the United States of America has valid and subsisting liens on all

1  property and rights to property belonging to Defendant Charles W. Uptergrove including, without

2  limitation, the Subject Property;

3      f) That the court order that the United States of America has valid and subsisting liens on all

4  property rights to property belonging to Defendant Martha G.F. Uptergrove including, without

5  limitation, the Subject Property; and

6      g) That the court order that the federal tax liens against Defendants Charles W. Uptergrove

7  and March G.F. Uptergrove be foreclosed upon their interest in the Subject Property, that the Subject

8  Property be ordered sold, and that the proceeds from such sale be distributed in accordance with the

9  court's findings as to the validity and priority of the liens and claims of all parties.

10

11                          **III. LEGAL STANDARD**

12      Plaintiff moves for entry of default judgment pursuant to Federal Rule of Civil Procedure

13  55(b)(2), which provides that judgment may be entered:

14          (2)    By the Court.  In all other cases the party entitled to a judgment
           by default shall apply to the court therefor; but no judgment by default
15         shall be entered against an infant or incompetent person unless
           represented in the action by a general guardian, committee,
16         conservator, or other such representative who has appeared therein. If
           the party against whom judgment by default is sought has appeared in
17         the action, the party (or, if appearing by representative, the party's
           representative) shall be served with written notice of the application
18         for judgment at least 3 days prior to the hearing on such application. If,
           in order to enable the court to enter judgment or to carry it into effect,
19         it is necessary to take an account or to determine the amount of
           damages or to establish the truth of any averment by evidence or to
20         make an investigation of any other matter, the court may conduct such
           hearings or order such references as it deems necessary and proper and
21         shall accord a right of trial by jury to the parties when and as required
           by any statute of the United States.

22

23      "Upon default, the well pleaded allegations of the complaint relating to liability are taken as

24  true."  Dundee Cement Co. v. Highway Pipe and Concrete Products, 722 F.2d 1319, 1323 (7th Cir.

25  1983); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  While factual

26  allegations of the complaint are taken as true upon default, damages are not.  Geddes v. United

27  Financial Group, 559 F. 2d 557, 560 (9th Cir. 1977).  Where damages are liquidated (i.e. capable of

28  ascertainment from definitive figures contained in the documentary evidence or in detailed

                                    4

affidavits), judgment by default may be entered without a damages hearing.  Dundee, 722 F. 2d 1323-24; see also, James v. Frame, 6 F. 3d 307, 310 (5th Cir. 1993).  Granting or denying default judgment is within the court's sound discretion.  See, Draper v. Coombs, 792 F. 2d 915, 924-25 (9th Cir. 1986) (citation omitted).

## IV. ANALYSIS

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

The court has evaluated the factors listed above and finds that the facts in this case weigh heavily in favor of granting default judgment. First, Plaintiff would suffer prejudice if the court does not enter default judgment because Defendants have refused to participate in this litigation and Plaintiff would have no other means of recovery.  Second, as outlined below, Plaintiff's Complaint properly alleges the necessary elements of each cause of action which satisfies the second and third factors; the merits of the substantive claim, and the sufficiency of the complaint.  The fourth factor is also met since there is a significant amount of money at stake in this action and the United States has demonstrated their actions are authorized under federal law and the amount of damages requested has been proven as described below.

The fifth, six, and seventh factors are also satisfied.  Although Defendants initially answered the Complaint and denied the allegations, they demonstrated a complete disregard for the litigation process.  They have been given numerous opportunities to dispute material facts but refused to defend the action in compliance with the Federal Rules of Civil Procedure. Similarly, as outlined in previous orders, it is clear from Defendants noncompliance with court orders that their actions have been willful and not the result of excusable neglect.  Finally, with regard to the last factor, although cases should be decided on the merits when reasonably possible, such preference alone is not dispositive.  PepsiCo Inc., v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

It is clear from Defendants actions that the court is unable to decide the case on the merits given Defendants' complete disregard for this court's jurisdiction.

### A. Plaintiff's First Claim

The United States' first claim for relief seeks to reduce assessments against Defendant Martha G.F. Uptergrove to judgment. These assessments were the result of unpaid federal employer's quarterly payroll taxes (form 941) unpaid federal employer's annual unemployment (Form 940) taxes, and a failure to file penalty under 26 U.S.C. § 6721, for the period of March 31, 2001 through March 31, 2002, These assessments all pertain to Defendant Martha G.F. Uptergrove's sole proprietorship of IKON roofing Company.

### B. Plaintiff's Second Claim

The United States' second claim for relief seeks to reduce assessments against Defendant Charles W. Uptergrove to judgment. These tax assessments against Mr. Uptergrove were the result of a Trust Fund Recovery Penalty, imposed under 26 U.S.C. § 6672, for the period of March 31, 1988, through and including June 30, 1989. This claim relates to Mr. Uptergrove's willful failure to collect, truthfully account for, and pay withheld income and FICA taxes of Uptergrove Group, Inc., d/b/a Uptergrove Roofing Company.

The recovery of a trust fund recovery pursuant to 26 U.S.C. § 6672 involves a two-step inquiry: First, it must be determined whether the taxpayer was responsible for collecting, truthfully accounting for, and paying federal tax on behalf of an employer. Second, it must be determined whether the taxpayer willfully failed to collect or pay the taxes at issue, by, for example, intentionally paying a creditor other than the United States after learning of the tax deficiency. Davis v. United States, 961 F. 2d 867, 869-871 (9th Cir. 1992); see also, Buffalow v. United States, 109 F. 3d 570, 573 (9th Cir. 1997); Purcell v. United States, 1 F. 3d 932, 936 (9th Cir. 1993).

### 1. Assessments of Taxes

With regard to Plaintiff's first and second claim, "[i]n an action to collect tax, the government bears the initial burden of proof. The government, however, may satisfy this initial burden by introducing into evidence its assessment of taxes due. Normally, introduction of the assessment establishes a prima facie case." Oliver v. United States, 921 F. 2d 916, 919 (9th Cir.

1  1990) (citations omitted); see also, United States v. Jones, 33 F. 3d 1137, 1139 (9th Cir. 1994)

2  ("Introducing Certificates of Assessments and Payments establish as prima facie case for the United

3  States."). Thus, the government satisfies it initial prima facie burden by introducing Certificates of

4  Assessments, and the burden then shifts to the taxpayer to show that he is not liable for the

5  assessments. Oliver v. United States, 921 F. 2d at 920.

6        The assessment made against the Uptergroves are reflected on the Certificates of

7  Assessments and Payments (Form 4340) submitted by the United States in support of its motion.

8  See, Decl. of IRS Internal Revenue Officer Mary Collins ("Collins Declaration") attached at Exhibit

9  1. These Certificates of Assessment which are attached at Exhibits A through P to the Collins

10  declaration establish that the tax liabilities were properly assessed against Mr. and Mrs. Uptergrove

11  (26 USC §§ 6201-6203), and that notices and demand for payment of liabilities were properly sent

12  (26 U.S.C. §§ 6303(a) & 6321). See, e.g. United States v. Chila, 871 F. 2d 1015, 1017-1019 (11th

13  Cir. 1989). These Certificates of Assessment also conclusively demonstrate that the unpaid balance

14  due on the relevant assessments against Charles W. Uptergrove, with accrued interest and penalties,

15  and other statutory additions as of March 31, 2008, is $385,879.94, and that the unpaid balance due

16  on the relevant assessments against Defendant Martha Uptergrove, with accrued interest, penalties,

17  and other statutory additions as of March 31, 2008, is $227, 716.49. See, Collins Declaration, at ¶ 8

18  & 9. Neither defendant has contested the amount of the assessments or the balances due.

19        Furthermore, the court previously ordered that Plaintiff's request for admissions are deemed

20  admitted by the parties. Doc. 77. Upon review of the these admissions, the Complaint, and the

21  Certificates of Assessment and related declarations, the court finds that liability has been established.

22   Specifically, it has been established that Defendant Charles Uptergrove was responsible for

23  collecting, truthfully accounting for, and paying federal tax on behalf of Uptergrove Roofing

24  Company, and that he willfully failed to collect or pay the taxes at issue.

25              *C. Plaintiff's Third Claim*

26        The United States third claim alleges that the United States has valid tax liens against all

27  property belonging to both Defendants and that they were given notice of those liens. (Comp. at

28  ¶27-28). Pursuant to 26 U.S.C. § 6321, the amount of the delinquent taxpayer's liability shall be a

lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to the taxpayer.  A lien imposed under § 6321 arises at the time the assessment is made and continues until the liability is satisfied, or the lien is removed in accordance with federal law.  26 U.S.C. § 6322.  A federal tax lien is perfected upon assessment and no further action need be taken. United States v. McDermott, 507 U.S. 447, 452-55 (1993); Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 267 (1945).

D.      Foreclosure and Sale of Property, and the Priority of Legitimate Liens

When there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, the Attorney General may bring an action in federal district court to enforce the lien created by 26 U.S.C. § 6321 or to subject any property held by the taxpayer to the payment of tax. 26 U.S.C. § 7403(a).  After adjudicating the merits of the United States' claims to the subject property, the district court may decree a sale of the property and order distribution of the proceeds from that sale.  26 U.S.C. § 7403 (c).

Here, Defendants have refused to pay the tax deficiencies, interest and penalties assessed against them.  The Uptergrove's defenses regarding the validity of those assessments have been rejected and they have had no meaningful participation in the defense of this litigation. Accordingly, it is recommended that the district court enter judgment in favor of the United States' tax liens upon their residence as described in this recommendation to satisfy the unpaid tax assessments made against Defendants. Specifically, the court recommends that the court award judgment in favor of the United States and against Charles W. Uptergrove, for unpaid income tax assessments which were the result of a trust Fund Recovery Penalty for the periods ending March 31, 1988, through and including June 30, 1989, with accrued interest and penalties and other statutory additions as of March 31, 2008, in the amount of $385,879.94, plus penalties and interest thereafter until paid pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c).

It is also recommended that the court award judgment in favor of the United States and against Martha G. F. Uptergrove, for unpaid income tax assessments for the periods ending March 31, 2001, through and including March 31, 2002, with accrued interest and penalties and other statutory additions as of March 31, 2008, in the amount of $227,716.49, plus penalties and interest

1   thereafter until paid pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c).

2          Additionally, on July 3, 2008, HomeEq, EDD and the United States stipulated to their

3   competing lien interests such that the proceeds arising from any sale of the Subject Property will be

4   disbursed in the following order : 1) To the United States Marshal, PALS, or whichever person or

5   entity conducted the sale for the costs of the sale, 2) then to all taxes unpaid and matured that are

6   owed (to county, borough or school district) for real property taxes on the Subject Property, 3) then

7   to Home Eq to the extent of Home Eq's secured lien, including principal and interest in an amount

8   according to proof at the time, and 4) then to the United States and EDD equally to the extent of their

9   respective liens including principal and interest in an amount according to proof at that time. [4]

10          Finally, pursuant to stipulation and orders filed February 16, 2007, the United States lien will

11  have priority over Defendant Copeland's lien.[5]  Doc. 25.  Thus, the order of judicial sale shall

12  provide that the sale proceeds be distributed to the United States and EDD equally before Copeland

13  to the extent of the United States' secured liens, including principal, interests to the date of

14  distribution, and reasonable attorney's fees pursuant to 26 U.S.C. § 6323(e), in an amount according

15  to proof at that time.

16          *E.  Reasonable Expenses*

17          This court has previously ordered Defendants pay the United States $1,597.81 and $308.56

18  for reasonable expenses related to their failures to appear at two sets of scheduled depositions. It

19  appears that the United States has not been reimbursed pursuant to this court's previous orders.

20  Accordingly, the court grants Plaintiff's request for judgment against Defendants, both jointly and

21

22          [4]  It should be noted, by stipulation and orders filed January 12, 2007, the United States and senior lien holder
    Defendant HomEq had previously resolved the competing priority of their respective liens. Doc. 19.  Specifically, that any

23  sale proceeds shall be distributed to HomEq before the United States to the extent of HomEq's secured lien, including
    principle, interest to the date of distribution, and reasonable attorneys' fees pursuant to 26 U.S.C. § 6323(e), relating to the

24  deed of trust in an amount according to proof at the time. Since the more recent stipulation did not include attorney fees, the
    Court has not included those in its proposed order.

25

26          [5]  On June 6, 2008, this court ordered that the United States, HomeEq, Copeland, and EDD file a joint stipulation
    or a status report regarding their respective lien priorities.  (Doc. 120).  It appears that Copeland Lumber declined to join in

27  the stipulation (Doc. 126), however, it also has not filed any opposition the stipulation. Since Copeland and the United States
    had previously entered into a stipulation, and Copeland has not filed an opposition to the stipulation, the Court assumes there

28  is no opposition from Copeland.

1   severally for the requested amounts.

2        Plaintiff has also requested penalties and interest.  However, Plaintiff has not the identified the

3   rate of interest that should be applied, nor has it cited an authority that interest and penalties would

4   apply.   Rule 37 of the Federal Rules of Civil Procedure which outlines discovery sanctions allows for

5   reasonable expenses but no other remedy.  Therefore, it is recommended that the request for penalties

6   and interest related to the amounts listed above be denied.

7        *F. Defendant Charles Uptergrove's Opposition*

8        Defendant Charles Uptergrove filed an opposition to the instant motion.  Preliminarily, the

9   court notes the correct procedural remedy would have been to file a motion to set aside entry of

10  default.  An answer or other opposition to a motion for default may be treated as a motion to set aside

11  entry of default and the court will consider Defendant's motion as such.   United Coin Meter v.

12  Seaboard Coastline RR., 705 F. 2d 839, 844 (6th Cir. 1983).   Default may be set aside by a showing of

13  good cause pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  Defendants have not

14  demonstrated good cause.

15       Further, in opposition to the motion for default judgment, Defendant Charles Uptergrove

16  argues that this court is without jurisdiction.  The court has repeatedly held that the jurisdictional

17  defense is without merit. Furthermore, while Defendants have refused to participate in discovery, Mr.

18  Uptergrove alleges that default judgment should not be granted because Plaintiff failed to timely

19  respond to Mr. Uptergrove's discovery requests.  Plaintiff's failure to comply with discovery does not

20  give Defendants an excuse to refuse and disobey court orders. [6] Additionally, the court finds this

21  argument unpersuasive. Defendant only served his discovery requests past the discovery deadline and

22  his own repeated failures to comply with the Civil Rules of Civil Procedure, as well as several of this

23  court's orders regarding his discovery obligations.[7]

24  _____

25       [6] The credibility of Mr. Uptergrove's claims regarding Plaintiff's discovery responses have been contested by the
    Plaintiff. Doc. 107.

26

27       [7] The discovery deadline in this case was October 12, 2007.  The court extended the discovery deadline only as a
    result of the Plaintiff's Motion to Compel and for the limited purpose of giving Defendants another opportunity to comply
    with Plaintiff's timely discovery requests.   Defendants never filed for a request to extend the discovery deadline, nor was

28  any extension ever granted to either Defendant. Docs. 53, 63, 75.

1    Finally, the court finds Mr. Uptergrove's argument that the court was required issue an Order

2  to Show Cause and have a hearing prior to entering default unpersuasive.  As outlined in this court's

3  previous order, Defendants were given numerous opportunities to appear in this action and were told

4  repeatedly that failure to appear would result in default judgment. Doc. 99.  Given Defendants'

5  contumacious conduct, the court determined that issuing an Order to Show Cause and having a

6  hearing would be futile.

7    The court is aware that default judgment should be used sparingly, however, "a district court is

8  not required to fire a warning shot." United States v. DiMucci, 879 F. 2d 1488, 1493-1494 (7th Cir.

9  1989) .  "District courts must have default judgment readily available within its arsenal of sanctions in

10 order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who

11 are not ... In other words, [a] trial court is entitled to say, under the proper circumstances, that enough

12 is enough."  Id. (citation omitted).  This case is one of those circumstances.

13    Based on the above, IT IS HEREBY RECOMMENDED that

14    1) Plaintiff's motion for default judgment as to Defendant Charles W. Uptergrove and Martha

15 Freeman Uptergrove be GRANTED IN PART as set forth above and as outlined in the Recommended

16 Default Judgment and Recommended Order of Foreclosure and Judicial Sale attached to this order.

17    This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

18 States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule

19 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

20 California.  Within thirty (30) days after being served with a copy, any party may file written

21 objections with the court and serve a copy on all parties.  Such a document should be captioned

22 "Objections to Magistrate Judge's Findings and Recommendations."  The Court will

23 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

24 advised that failure to file objections within the specified time may waive the right to appeal the

25 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26    IT IS SO ORDERED:

27    AUGUST 13, 2008                                    /s/ GARY S. AUSTIN

28                                                                U.S. MAGISTRATE JUDGE

1

2

3

4

5

6

7                                    **IN THE UNITED STATES DISTRICT COURT**

8                             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10    UNITED STATES OF AMERICA,                     CASE NO. 1:06-CV-1630-AWI-GSA

11                       Plaintiff,                 **RECOMMENDED ORDER FOR DEFAULT
                                                    JUDGMENT**

12                                                  **RECOMMENDED ORDER FOR
                                                    FORECLOSURE AND JUDICIAL SALE**
13

14           vs.

15

16    CHARLES WAYNE UPTERGROVE, *et al.*,

17                       Defendants.
      _____/

18           Upon motion of Plaintiff the United States of America ("United States"), and for good cause

19    shown, it is hereby ORDERED, pursuant to Fed. R. Civ. P. 55(b), that the United States' Motion for

20    Default Judgment is GRANTED IN PART as outlined below.  IT IS FURTHER ORDERED,

21    pursuant to the provisions of 28 U.S.C. §§ 2001 & 2002, and 26 U.S.C. §§ 7402 & 7403, that the

22    following Order of Foreclosure and Judicial Sale should be, and hereby is, entered:

23           1.      Defendant Charles W. Uptergrove is indebted to the United States for unpaid assessed

24    balances of federal taxes for the periods ending March 31, 1988, through and including June 30, 1989,

25    plus interest and statutory additions accruing after the dates of assessment pursuant to 26 U.S.C. §§

26    6601, 6621 and 6622, and 28 U.S.C. § 1961(c) until paid.  Defendant Charles W. Uptergrove is also

27    indebted to the United States for unpaid sanctions entered by the Court on February 1, 2008 and

28

                                                      12

1  March 10, 2008.   On _____, 2008, the Court entered judgment in favor of the United

2  States and against Defendant Charles W. Uptergrove for his federal tax liabilities for the periods

3  ending March 31, 1988, through and including June 30, 1989, calculated through March 31, 2008, in

4  the amount of $385,879.94, plus such additional statutory additions, including interest, as continue to

5  accrue until paid in full, and for his unpaid, Court imposed sanctions in the amount of $1,597.81 and

6  in the amount of $308.56.

7          2.        Defendant Martha G. F. Uptergrove is indebted to the United States for unpaid

8  assessed balances of federal taxes for the periods ending March 31, 2001, through and including

9  March 31, 2002, plus interest and statutory additions accruing after the dates of assessment pursuant

10  to 26 U.S.C. §§ 6601, 6621 and 6622, and 28 U.S.C. § 1961(c) until paid.   Defendant Martha G. F.

11  Uptergrove is also indebted to the United States for unpaid sanctions entered by the Court on

12  February 1, 2008 and March 10, 2008.   On _____, 2008, the Court entered judgment in

13  favor of the United States and against  Defendant Martha G. F. Uptergrove for her federal tax

14  liabilities for the periods ending March 31, 2001, through and including March 31, 2002, calculated

15  through March 31, 2008, in the amount of $227,716.49, plus such additional statutory additions,

16  including interest, as continue to accrue until paid in full, and for her unpaid, Court imposed sanctions

17  in the amount of $1,597.81, and in the amount of $308.56.

18          3.        The Subject Property upon which foreclosure is sought is as follows:

19                  The real property located at 26662 Road 23, Chowchilla, California, 93613, legally

20                  described as follows:

21                  Real property in the unincorporated area of the County of MADERA, State of
                    California, described as follows:

22
                        THE NORTH ¾ OF THE NORTH ½ OF THE SOUTHEAST ¼ OF THE
23                      NORTHEAST ¼ OF SECTION 20, TOWNSHIP 9 SOUTH, RANGE 17 EAST,
                        MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL
24                      PLAT THEREOF.
                        APN: 030-120-013.

25

26          4.        On March 19, 1996, a duly authorized delegate of the Secretary of Treasury made

27  assessments for a Trust Fund Recovery Penalty against Defendant Charles W. Uptergrove for the tax

28  for the periods ending March 31, 1988, through and including June 30, 1989.

5.     The United States has valid and subsisting tax liens on all property and rights to property of Defendant Charles W. Uptergrove, including the Subject Property, arising from the above-described assessments, which tax liens are effective as of the dates of those assessments.

6.     26 U.S.C. § 7403 entitles the United States to enforce its liens against the Subject Property in order to apply the proceeds towards the tax liabilities of Defendant Charles W. Uptergrove.

7.     On October 21, 2002, a duly authorized delegate of the Secretary of Treasury made assessments for unpaid federal employer's quarterly payroll (form 941) taxes against Defendant Martha G. F. Uptergrove for the tax periods ending March 31, 2001, through and including December 31, 2001.

8.     On October 28, 2002, a duly authorized delegate of the Secretary of Treasury made assessments for unpaid federal employer's annual unemployment (Form 940) taxes against Defendant Martha G. F. Uptergrove for the tax period ending December 31, 2001.

9.     On September 13, 2004, a duly authorized delegate of the Secretary of Treasury made assessments for a failure to file penalty under 26 U.S.C. § 6721 against Defendant Martha G. F. Uptergrove for the tax period ending December 31, 2001.

10.     On October 14, 2002, a duly authorized delegate of the Secretary of Treasury made assessments for unpaid federal employer's quarterly payroll (form 941) taxes against Defendant Martha G. F. Uptergrove for the tax period ending March 31, 2002.

11.     The United States has valid and subsisting tax liens on all property and rights to property of Defendant Martha G. F. Uptergrove, including the Subject Property, arising from the above-described assessments, which tax liens are effective as of the dates of those assessments.

12.     26 U.S.C. § 7403 entitles the United States to enforce its liens against the Subject Property in order to apply the proceeds towards the tax liabilities of Defendant Martha G. F. Uptergrove.

13.     The United States' liens against the Subject Property are hereby foreclosed.

14.     The United States Marshal for the Eastern District of California, his/her representative, or an Internal Revenue Service Property Appraisal and Liquidation Specialist

14

("PALS"), is authorized and directed under 28 U.S.C. §§ 2001 & 2002 to offer for public sale and to sell the Subject Property.  The United States may choose either the United States Marshal or a PALS to carry out the sale of the Subject Property under this Order and shall make the arrangements for any sale as set forth in this Order.

15.     The Marshal, his or her representative, or a PALS representative is authorized to have free access to the Subject Property and to take all actions necessary to preserve the Subject Property, including, but not limited to, retaining locksmiths or other persons to change or install locks or other security devices on any part of the Subject Property, until the Subject Property is delivered to the ultimate purchasers.

16.     The terms and conditions of the sale of the Subject Property (or any of them) are as follows:

a.     The sale of the Subject Property shall be free and clear of the interests of all parties to this lawsuit;

b.     The sale of the Subject Property shall be subject to building lines, if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the Subject Property, and easements and restrictions of record, if any;

c.     The sale of the Subject Property shall be held at the courthouse of the county or city in which the Subject Property is located, on the premises of the Subject Property, or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 & 2002;

d.     The date and time for the sale of the Subject Property is to be announced by the United States Marshal, his/her representative, or a PALS;

e.     Notice of the sale of the Subject Property shall be published once a week for at least four consecutive weeks before the sale in at least one newspaper regularly issued and of general circulation in the county in which the Subject Property is located, and, at the discretion of the Marshal, his/her representative, or a PALS, by any other notice deemed appropriate.  Each notice shall contain a description of the Subject Property for sale and shall contain the terms and conditions of sale in this order of sale;

f.     Minimum bids will be set by the Internal Revenue Service.  If the minimum bid is not

1  met or exceeded, the Marshal, his or her representative, or a PALS may, without further permission

2  of this Court, and under the terms and conditions in this order of sale, hold a new public sale, if

3  necessary, and reduce the minimum bid or sell to second highest bidder;

4          g.      The successful bidder shall be required to deposit at the time of the sale with the

5  Marshal, his/her representative, or a PALS a minimum of ten percent of the bid, with the deposit to

6  be made by certified or cashier's check payable to the United States District Court for the Eastern

7  District of California;

8          h.      Before being permitted to bid at the sale of the Subject Property, bidders shall display

9  to the Marshal, his/her representative, or a PALS proof that they are able to comply with this

10  requirement.  No bids will be received from any person who has not presented proof that, if they are

11  the successful bidders, they can make the deposit required by this Order;

12          i.      The balance of the purchase price for the Subject Property is to be paid to the United

13  States Marshall or a PALS (whichever is conducting the sale) within 20 days after the date the bid is

14  accepted, by a certified or cashier's check payable to the United States District Court for the Eastern

15  District of California.  If a bidder fails to fulfill this requirement, the deposit shall be forfeited and

16  shall be applied to cover the expenses of the sale, including commissions due under 28 U.S.C. §

17  1921(c), with any amount remaining to be distributed in accordance with numbered paragraph 19,

18  below. The Subject Property shall be again offered for sale under the terms and conditions of this

19  Order;

20          j.      The sale of the Subject Property shall be subject to confirmation by this Court.  The

21  Marshal or a PALS shall file a report of sale with the Court, together with a proposed order of

22  confirmation of sale and proposed deed, within 20 days from the date of receipt of the balance of the

23  purchase price for the Subject Property;

24          k.      On confirmation of the sale of the Subject Property the Internal Revenue Service shall

25  execute and deliver deed a of judicial sale conveying the Subject Property sold to the purchaser;

26          l.      On confirmation of the sale of the Subject Property, all interests in, liens against, or

27  claims to, the Subject Property that are held or asserted by any party to this action are discharged and

28  extinguished;

m.     The sale of the Subject Property is ordered pursuant to 28 U.S.C. § 2001, and is made without rights of redemption.

17.    Until the Subject Property is sold, Defendants Charles W. Uptergrove and Martha G. F. Uptergrove shall take all reasonable steps necessary to preserve the Subject Property (including all buildings, improvements, fixtures and appurtenances on the Subject Property) in its current condition including, without limitation, maintaining a fire and casualty insurance policy on the Subject Property.  They shall neither commit waste against the Subject Property nor cause or permit anyone else to do so.  They shall neither do anything that tends to reduce the value or marketability of the Subject Property nor cause or permit anyone else to do so.  They shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the Subject Property or that may tend to deter or discourage potential bidders from participating in the public auctions, nor shall they cause or permit anyone else to do so.

18.    All persons occupying the Subject Property shall leave and vacate the Subject Property permanently within 60 days of the service of a copy of this Order on any such persons, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Properties).  If any person fails or refuses to leave and vacate the Subject Property by the time specified in this Order, the United States Marshal's Office, alone, is authorized to take whatever action it deems appropriate to remove such person from the premises, whether or not the sale of such Subject Property is being conducted by a PALS.  If any person fails or refuses to remove his or her personal property from the Subject Property by the time specified herein, the personal property remaining on the Subject Property thereafter is deemed forfeited and abandoned, and the United States Marshal's Office is authorized to remove it and to dispose of it in any manner it deems appropriate, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

19.    The proceeds arising from the sale are to be paid to the Clerk of this Court and applied as far as they shall be sufficient to the following items, in the order specified:

a.     To the United States Marshal or the PALS (whichever conducted the sale as arranged

17

by the United States) for the costs of the sale;

b.    Then to all taxes unpaid and matured that are owed (to county, borough or school district) for real property taxes on the Subject Property;

c.    Then to Home Eq Servicing Corp. to the extent of Home Eq's secured lien, including principal and interest  in an amount according to proof at the time;

d.    Then to the United States and the State of California Employment Development Department equally to the extent of their respective liens including principal and interest in an amount according to proof at that time;

e.    Then to Copeland Lumber Company to the extent of its liens, including principal, interests to the date of distribution, and reasonable attorney's fees pursuant to 26 U.S.C. § 6323(e), in an amount according to proof at that time.